**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DIVISION OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **AUNDRE HOWARD,** | )( | **Civil Action No.: 21-cv-1179** |
| | )( | **(Jury Trial)** |
| *Plaintiff,* | )( | |
| | )( | |
| **V.** | )( | |
| | )( | |
| **CITY OF HOUSTON, TEXAS;** | )( | |
| **ART ACEVEDO,** *Individually;* | )( | |
| **SGT. EARL ATTEBURY,** *Individually,* | )( | |
| **LUCAS L. VIEIRA,** *Individually;* **and** | )( | |
| **THOMAS SERRANO,** *Individually,* | )( | |
| **NADEEM ASLAM,** *Individually,* | )( | |
| | )( | |
| *Defendants.* | )( | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**TO THE HONORABLE JUDGE OF THE COURT:**

NOW COMES Plaintiff AUNDRE HOWARD complaining of the CITY OF

HOUSTON, TEXAS; ART ACEVEDO, *Individually;* LUCAS L. VIEIRA, *Individually;*

SGT. EARL ATTEBURY, *Individually;* THOMAS SERRANO, *Individually,* and

NADEEM ASLAM, *Individually,* and will show the Court the following:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction over Plaintiff's federal claims, under 28 U.S.C. §

1331, 42 U.S.C. §§ 1983 and 1988, and supplemental jurisdiction, under 28 U.S.C. §

1367(a), to hear Plaintiff's state law claims, if any. Venue is proper in this Court, under 28

U.S.C. § 1391(b) because the incident at issue took place in Harris County, Texas within the United States Southern District of Texas.

## PARTIES

2.      Plaintiff AUNDRE HOWARD is a resident of Harris County, Texas.

3.      Defendant CITY OF HOUSTON, TEXAS, is a municipality existing under the laws of the State of Texas and situated mainly in Harris County, Texas in the U.S. Southern District of Texas and has been served with process by serving the City of Houston Secretary at 901 Bagby, Houston, TX 77012.

4.      Defendant LUCAS L. VIEIRA is sued in his individual capacity and can be served with process at 61 Reisner, Houston, TX 77002 or wherever he is found.

5.      Defendant SGT. EARL ATTEBURY is sued in his individual capacity and can be served with process at 61 Reisner, Houston, TX 77002 or wherever he is found.

6.      Defendant THOMAS SERRANO is sued in his individual capacity and can be served with process at 61 Reisner, Houston, TX 77002 or wherever he is found.

7.      Defendant NADEEM ASLAM is sued in his individual capacity and can be served with process at 61 Reisner, Houston, TX 77002 or wherever he is found.

## INTRODUCTION (SOME FACTS)

8.      July 7, 2019 Houston police officers Lucas L. Vieira (Officer Vieira) and Thomas Serrano (Officer Serrano) made a traffic stop on Aundre Howard (Mr. Howard) for a traffic violation. They handcuffed Mr. Howard and thoroughly searched him for

weapons and found none. Still handcuffed Mr. Howard ran from the scene and was easily caught within a block by Officer Serrano. While the brief chase ensued Officer Vieira shouted for Officer Serrano to shoot Mr. Howard twice with Mr. Howard's back to him and even shouted "BOP BOP." This terrified Mr. Howard so greatly, he defecated. When Officer Vieira caught up with the already restrained Mr. Howard he then used his steel handcuffs as "brass knuckles" and smashed Mr. Howard in the back of the head at least three times. Serrano saw this obvious excessive force and did nothing.

9.       As Officers Howard, Serrano and a 3rd HPD officer walked Mr. Howard back to the traffic stop scene they used more excessive force upon Mr. Howard yet no officer, by words or action, did anything to intervene. The officers then put the handcuffed Mr. Howard on the ground and pulled down his pants where passersby could see Mr. Howard's buttocks with the feces and genitals all the while making fun of Mr. Howard about the defecation. Other HPD officers congregated around Mr. Howard with his pants down on the pavement and did not intervene by words or action. Officer Vieira bragged to several arriving officers including Sgt. Earl Attebury about what he did. Despite knowing about Vieira's and other HPD officer's policy violations no officer reported any other officer nor was an IAD complaint filed by any officer. Mr. Howard did not assault any officer and no officer was injured by Mr. Howard. Many of the events are caught on Officer Vieira's, and other, body camera videos, a small portion of which is shown by local TV news media at https://www.click2houston.com/news/local/2020/11/11/houston-man-says-hes-victim-of-excessive-force-at-hands-of-houston-police/.

## <u>ADDITIONAL FACTS</u>

10.     Aundre Howard, 33, was driving with a passenger on a Houston city street with a when he was pulled for expired registration, a Class C misdemeanor.

11.     Officer Vieira commands Mr. Howard to get out of the car and he complies. Officer Vieira immediately puts Mr. Howard in handcuffs.

12.     Officer Serrano does a search of Mr. Howard including his genital area and finds no weapons. Officer Serrano then takes Mr. Howard to the squad car.

13.     While Serrano is about to put on rubbers gloves for a body cavity search a still handcuffed Mr. Howard runs from the scene and was easily caught within a block by Officer Serrano. Later, Officer Serrano remarks, "He's kinna slow."

14.     While the brief chase ensued Officer Vieira shouted for Officer Serrano to shoot Mr. Howard twice with Mr. Howard's back to him and even shouted "BOP BOP BOP BOP." Officer Vieira used many expletives. This terrified Mr. Howard so greatly, he defecated.

15.     When Officer Vieira caught up with the already restrained Mr. Howard he then used his steel handcuffs as "brass knuckles" and smashed Mr. Howard in the back of the head at least three times. Serrano saw this obvious excessive force and did nothing.

16.     Another HPD officer shows up to assist with Mr. Howard now on the ground.

17.     All the while Officer Vieira is making numerous threats and referencing his earlier beating of Mr. Howard.

18.     While walking back to the squad car Officer Vieira pokes Mr. Howard in the head for no legal reason.

<u>PLAINTIFF'S 1ˢᵗ AMENDED ORIGINAL COMPLAINT</u>                    Page 4

19.     While walking back to the squad car Officer Vieira with Officer Serrano and the other force Mr. Howard's head down for no legal reason.

20.     When the HPD officers get back to the squad car they slam Mr. Howard on the squad car and pull downs his pants and shorts revealing Mr. Howard's buttocks, genitals and feces, all the while using pain techniques without valid reason. The HPD officers then force Mr. Howard to the pavement and cause contusions to his face.

21.     With Mr. Howard on the pavement and pants down with buttocks and feces and genitals showing in public view HPD officer Nadeem Aslam (Officer Aslam) arrives and searches Mr. Howard's car. During Officer Aslam's arrival and search of the vehicle Mr. Howard is in full view of Mr. Howard. Officer Aslam does nothing by words or action to stop the illegal search of Mr. Howard does not report any violations of HPD policy as is required by HPD policy.

22.     With Mr. Howard still on the pavement and pants down another HPD officer, who Officer Vieira calls "boss,' arrives and observes Mr. Howard in the publicly visible area with his buttocks and genitals exposed. This officer does nothing by words or actions to prevent this humiliation nor does he report any officer for illegal search or other HPD violations.

23.      HPD Sgt. Earl Attebury arrives and Officer Vieira admits to Sgt. Attebury, with Officer Serrano present, that while handcuffed he used his handcuffs to hit Mr. Howard in the back of his head. Officer Vieira also admits to Sgt. Attebury about the threat to shoot Mr. Howard. Sgt. Attebury sees Mr. Howard in the publicly visible area with his buttocks, feces and genitals exposed and does nothing by words or actions to prevent this

humiliation. Sgt. Attebury does not report any HPD officer for illegal search, excessive force or other HPD violations.

24.     There are other HPD officers present, as observed on the body camera videos, who witness Mr. Howard on the ground with his buttocks and genitals publicly exposed who do nothing about it. No HPD officer referenced above reports any other for any policy violation of the Houston Police Department.

25.     Mr. Howard suffered great pain, contusions, humiliation, anxiety, fear, loss of sleep, headaches, and other mental anguish as a result of defendants actions.

26.     Both Charles Chukwu in 2008 and Trenton Garrett in 2009 were severely beaten at a Houston jail by City of Houston employees without valid reason and despite, in both cases, there being a video of the incident clearly showing excessive force no City of Houston employee was disciplined in the matter even though IAD investigations were performed in both cases.

27.     November 18, 2014 HPD Officer S. Corral is caught on video smashing a hand-cuffed arrestee Reuben Williams' head into an iron jail cell door. Then Officer Corral applies a neck nerve hold on a non-resisting Rueben until he passes out whilst bleeding profusely. To cover-up his crime Officer Corral falsely charges Reuben Williams with felony harassment of a public servant for spitting on him but then, quite strangely, fails to collect the important DNA-rich saliva evidence. HPD Internal affairs reviewed the video and yet no discipline was meted out as smashing a handcuffed prisoner's head into an iron door jamb is allowable under the City of Houston jail practices. The harassment charge was dismissed.

28.     In 2016 Akrem Azzam was beaten several times by Houston jailer Lasswon Harris. Houston jailer Sheila Ross had the opportunity to intervene in the several beatings but chose not to. Jailer Shannon plead guilty to assault causing bodily injury in a Harris County court, sentenced to jail time and put on community supervision. Houston jailer Lasswon Shannon was caught on video repeatedly striking handcuffed Azzam in the head and face and slamming him onto the filthy concrete jail cell floor with Jailer Ross looking on.

29.     Over the last 13 years there has been over 250 instances of Houston Police Department wounding and killing individuals by firearms yet there has been no discipline or finding of any misconduct by the shooting officers despite many instances of clear excessive force.

30.     Houston Chief of Police McClelland and past Chiefs of Police and staff back to at least January 1, 2000 were aware of the many instances of excessive force at the jail and elsewhere that were unjustified but have not retrained or disciplined officers such that excessive force remains a custom and practice at the Houston City jails and elsewhere.

31.     Some of these instances include (all caught on video, reviewed by supervisors and no or inadequate discipline or retraining meted out):

1.      July 21, 2000 - Wanda Brent; During pat down in the jail was taken to the ground with force when there was no need. Many HPD officers were involved.
2.      February 17, 2007 - Steven Mikeasley is handled in hallway, pushed up against wall. Period of time off camera, then back in view hogtied.
3.      June 5, 2007 or March 5, 1997 - Brian Golott. Brought into the jail intake are forcefully without reason. Put on gurney and taken to isolation. City blacks out center of a video recording out so can't see what's going on. At least 3 HPD officers involved.

4.      September 23, 2007 Inmate taken down without reason with many HPD officers involved.

5.      November 19, 2007 - Hasan Matthews was suddenly taken down by 3 officers and handcuffed in initial jail booking area.

6.      January 27, 2008 - Samuel Smith was talking on the phone in the jail holding cell when 2 officers enter, take him down and lead out without reason.

7.      April 4, 2008 - Alexandra Koch (sp.?) was laying on floor in isolation, 6 HPD officers or jailers come in, wrestle with her and take her out of room and out of camera visual. She's on the ground and the officers walk away. It appears that a few come and check on her and she's taken out of the police department and put in an ambulance.

8.      May 26, 2008 - Kenneth Cert (sp.?) suddenly on the ground on other side of jail hall with one officer or jailer. Video excises 30 seconds until next frame and Kenneth is standing up on the initial side of the hall.

9.      June 5, 2008 - Nakia Stark (sp.?) something happens at the jail inateke windows and she's taken to isolation. She hits the walls and is in isolation for about 10 minutes before they take her out and take photos. She then leaves space.

10.     June 21, 2008 - Jeffrey Clark man in white shirt taken down and cuffed during booking for no apparent reason.

11.     June 21, 2008 (?) -Man in yellow shirt and red visor is on the phone in holding cell. He walks past the door and sits down. He is grabbed and taken down by 3 officers without reason.

12.     July 26, 2008 - Clyde Jones is taken down in first few jail video frames by officers and punched for no apparent reason.

13.     September 30, 2008 - Furrell Holmes. Officers break up a fight in the jail cafeteria. Officer tackles a guy in sleeping area and video is altered.

14.     October 18, 2008 – inmate taken down on video without reason then 2, 3, then 4 officers punching and kicking him. Taken down the hall and pushed up against the wall.

15.     December 28, 2008 - Three officers carry in guy with a bloody head lifted into the air.

16.     January 17, 2009 - Timothy Peavy was held against a wall when handcuffed and taken down by 5 officers without reason.

17.     April 12, 2009 - Oliver Nicholas was suddenly on ground but video is altered.

18.     August 23, 2009 - Inmate is cell hall and is hit repeatedly and choked without reason.

19.     October 13, 2009 - C. Whitley. Officer goes after inmate and brings him to the ground. Takes multiple officers to get under control. Force was greater than needed.

20.     December 12, 2009 - Eric Cossie was thrown down by neck. There

was no reason as inmate doesn't fight back just puts up hands to protect himself.

21.     February 13, 2010 - David Compean is in booking area, he stands up and is jumped by officers, cuffed and put in isolation. Uncuffed and cooperates through rest of booking.

22.     March 3, 2010 – Inmate Cooper is taken out of cell and put in isolation by dragging. Inmate Cooper then bangs on door and officers come in, take him out of frame and then bring back in. Inmate Cooper is again dragged out of frame and out of video view for over a minute.  Bangs on door and taken out again for  along period of time.

23.     May 3, 2010, David Luke during check-in (long room with windows to take items), attacked, taken down, cuffed and taken to cell. Left in cell for long period of time, still handcuffed.

24.     August 12, 2010 - W. Cotley. Woman officer comes into elevator, yells and hits (pushes him back with a throat hit). He tries to keep her away and she         keeps coming at him. Multiple officers hold her back and she continues to try to        get to him.

24.     August 15, 2010 – Inmate Harrison Taken down, head hit to ground. Doctor comes and puts a bandage on. Officers use excessive force during cuffing and break his arm. Laying on ground and unable to use right arm. Doctor comes back and puts it in a splint.

25.     March 16, 2011 - Lewis Henderson is checking in his items when officer takes him down and cuffs him for no reason.

26.     April 27, 2011 - Donald Brooks brought in superman style (feet off floor) because made himself limp. Another rough lift by handcuffs behind his back and pushed to sitting position. Dragged by cuffed wrists to cage. As soon as in cage, he stands up and is angry. Officers go to take him out, he resists and is dragged out of frame.

27.     June 24, 2011 - Charles Perez is in hallway, takes a step forward and officer pushes him back, takes him down and 2 more officers assist without reason.

28.     October 24, 2011 - Pedro Barrero in is jail booking area and is thrown down for no apparent reason.

32.     The City of Houston Police Department Homicide Division is the main investigator, taking witness statements and collecting evidence among other investigatory activities in all Houston Police shootings including Phillip's shooting.

332.     Around FOUR HUNDRED FIFTY (450) HPD officers have been involved in the killing or wounding of civilians since January 1, 2004 yet not one HPD officer has

PLAINTIFF'S 1st AMENDED ORIGINAL COMPLAINT                    Page 9

been indicted when HPD Homicide Division's collected evidence and conclusions were presented to a Harris County Grand Jury. Furthermore, there is no evidence that since January 1, 2004 a single HPD officer has been disciplined for a City policy violation due to shooting a civilian after the HPD Internal Affairs Department investigation into the shooting. About 25% of these shootings involved citizens with no weapons.

34.     In December, 2016 new Houston Police Chief Acevedo stated he was creating a special HPD unit apart from homicide to investigate situations such as shootings of civilians.

35.     On October 1, 1998, HPD Officers Anthony M. Ruggeroli and Brian T. Mitchel shot at suspects in a stopped car when they did nothing more than not respond immediately to verbal commands. Officer Ruggeroli merely shouted a few commands then left cover and went to the passenger window and shot at the unarmed driver. Officer Mitchel than ran up to the *passenger window and smashed it* and grabbed the passenger. The officers were not disciplined for using excessive force nor retrained in use of force or the proper high risk vehicle approach tactics, indicating ratification and acceptance of patterns, practices, customs and/or procedures of the excessive use of force.

36.     In 1999, HPD Sgt. Glover's gun went off and struck a suspect when he used it to bash in passenger side window. Officer Shockley then discharged his weapon striking the other suspect in the vehicle. Despite using excessive force on both suspects and failure to use safe high risk vehicle approaches and full IAD investigation, there was no discipline or retraining as a result of this incident, indicating ratification and acceptance of HPD's

excessive use of force and dangerous and unconstitutional high-risk vehicle approach (felony stop) patterns, practices, and

customs.

37.     In 1999, Jason Arboleda was shot and killed by HPD Officer R. A. Williams. Jason had left a bar with his friend Franky Aguirre, who was a passenger. On the way out from the area he struck, but did not seriously injure, Officer R. A. Williams. Officer Williams then chased after Mr. Arboleda on foot and stopped him at a traffic light as Jason tried to flee in his vehicle. Officer Williams ordered Mr. Arboleda out of the car and on to the ground to which Mr. Arboleda complied. At that point, Officer Williams did *not* handcuff or otherwise secure Mr. Arboleda, who then jumped back in his car. The officer ran to the front of the car instead of obtaining cover. As Mr. Arboleda drove forward, Officer Williams shot and killed Jason.    Officer Williams was not hit by the car and even felt safe enough to shoot rather to spend time getting out of the way. Despite IAD investigation, Officer Williams was not disciplined or retrained in the use of excessive force or high risk vehicle approach. The City determined it was a justified shooting and it never addressed Officer Williams' failure to follow either the written HRVA policy or any safe HRVA method. Further, the City did not order any training, indicating ratification and acceptance of HPD's dangerous and unconstitutional high-risk vehicle approach (felony stop) patterns, practices, customs and/or procedures and use of force.

38.     In 2000, HPD Officer R. C. Headley stopped a vehicle and determined it was stolen. Officer Headley then shot Mr. Langston (driver) and Mr. Plumbar (passenger) when

there was no reason to do so. Neither person was armed. Despite IAD investigation, there was no discipline nor training ordered.

39.     In 2000, Officer Selvyn J. Ellis, who had 47 sustained complaints against him, received a suspension instead of firing, despite the fact he refused to answer questions during an

IAD inquiry into improper conduct, including allegations of assault. He had previously been suspended for injuring a bar patron while working an extra job and not reporting the use of force.

40.     In 2002, Officer Ted A. Adams, who has 41 sustained complaints against him, received a one-day suspension instead of firing for not reporting the use of force after injuring a female after knocking her to the pavement with a leg sweep.

41.     In 2003, Houston Police Lieutenant Hillman was involved in a faulty high-risk vehicle approach and used excessive force against unarmed Kevin Lunsford. When Hillman got near Lunsford he claimed that Lunsford moved and then Lt. Hillman shot and killed Lunsford. Despite IAD investigation, there was no discipline for excessive use of force or any training required.

42.     On October 31, 2003, HPD Officer Butler was working at a large AMC movie theater in west Houston when 15 year old Jose Vargas was purportedly playing his radio too loud in his vehicle on his way to see a movie with his three teenage friends. Officer Butler went to investigate and the kids left. Officer Butler claimed the kids did not obey his commands to stop so Butler then gave pursuit. Vargas was scared and drove off. Officer Butler rushed up to the vehicle on foot when it was stopped in traffic with his gun

drawn and not under any cover. This startled the 15 year old unarmed Vargas and the vehicle lurched forward with Officer Butler at the side of the driver's window. Officer Butler then shot and killed Vargas. Vargas had no criminal history. Despite the obvious excessive use of force and IAD investigation, Officer Butler was not disciplined nor retrained in the use of force.

43.     In 2003, Mr. Juan Lozano was killed because HPD Officer R. L. Plotner used faulty high risk vehicle approach techniques by approaching a vehicle and failing to get under cover and give verbal commands to Lozano in a vehicle after a pursuit. Without being in fear of his life or serious bodily injury, Plotner shot and killed Juan. This officer was not disciplined or retrained in proper high risk vehicle approach tactics nor excessive use of force, indicating ratification and acceptance of HPD's dangerous and unconstitutional high-risk vehicle approach (felony stop) patterns, practices, customs and/or procedures similar to those that killed Roland.

44.     In 2003, HPD Officer Rivera made a stop of a felony suspect in a van. Instead of gaining cover and shouting verbal commands, Officer Rivera left cover and approached the van exposed. Officer Rivera shot the van driver when he was not frightened for his life. Officer River, however, should have maintained cover and a position of advantage. Officer Rivera was not disciplined or retrained for use of excessive force despite IAD investigation.

45.     In 2004, HPD Officer C. Pena Jr. shot and seriously wounded an unarmed 16 year-old girl who was under a vehicle. Officer Pena gave verbal commands to LaDonna Banks and then shot her. Officer Pena received no discipline and no training in gaining cover when dealing with suspects and his use of excessive force.

46.    In 2005 HPD Officer Thompson used faulty high-risk vehicle approach techniques and excessive force resulting in the shooting of an unarmed suspect, Timothy M. Thomas, who was driving when Officer Thompson pulled him over. Officer Thompson became suspicious because the driver was black and he had heard of a black felony burglary suspect. At first, Officer Thompson was behind cover and using his bullhorn. This only lasted a few minutes

and then the officer left his cover and approached the vehicle with his gun drawn. Mr. Thomas started to get out of the car and when he did, he was shot by Officer Thompson who said he was in fear of his life due to Mr. Thomas' innocent movements. Thomas had no gun. Officer Thompson obviously used excessive force and faulty high risk vehicle approach. Officer Thompson was not disciplined and there was no training despite a full HPD IAD investigation.

47.    August 14, 2007, a 17-year old unarmed girl was seriously wounded because of faulty high risk vehicle approach. Brittanee King, 17, was a *littering* suspect who had fled in a car for a short distance and was pursued by HPD Officer Carraway approached her with gun drawn. When Brittanee stopped the vehicle to comply with the officer, Officer Carraway failed to use safe HRVA methods and left cover and exposed himself in full view of the young unarmed girl in the car. When the unarmed Brittanee made an innocent movement, Officer Carraway claimed he feared for his life because he was not behind cover and in a position of advantage and shot Brittanee, wounding her. Officer Carraway claimed he saw a shiny object--Brittanee was wearing shiny bracelets. Despite the

admission of unsafe HRVA approach methods and use of excessive force, no discipline or training was administered despite an IAD investigation

48.     In 2008 Charles Chukwu was arrested and taken to the City of Houston jail at Mykawa Road where he was beaten by at least one City of Houston jailer without any reason. After the beating, Mr. Chukwu was purposefully released before he could get the names of the jail inmate witnesses. The jailers failed to file a timely use of force report and did not stop the beating of Mr. Chukwu, nor did the Houston jailers report another Houston jailer for the obvious

excessive force. The jailers refused to take Mr. Chukwu to the jail clinic or hospital where the injuries could be documented, despite the excessive use of force and obvious injures.

49.     The Chukwu incident was caught on videotape and investigated by the Houston IAD. It failed to find any violation when, in fact, excessive force had been used against Mr. Chukwu. Mr. Chukwu asked for the videotape from former City Mayor Bill White, Houston City Council and the HPD IAD, but was refused. At a Houston City Council meeting, Councilman Adrian Garcia stated that the videotape should be released. City Council member Sue Lovell asked the HPD IAD about the Chukwu jail beating video, however, she apparently never received a copy of the Chukwu video. More than two years after the alleged beating, Mr. Chukwu has not received the beating videotape.

50.     On June 22, 2008, Henry Lee Madge was struck several times while in handcuffs

by a Houston police officer without justification and the officer was not disciplined.

51.     Around February 6, 2009, Trenton Garrett was arrested and taken to the Houston jail at Mykawa Road where City of Houston jailers beat him without any reason. The jailers failed to file a timely use of force report and did not stop the beating of Mr. Garrett, nor did the Houston jailers report another Houston jailer for the obvious excessive force. The jailers refused to take Mr. Garrett to a hospital where the injuries could be documented despite the excessive use of force and obvious injures. The incident was caught on videotape and investigated by the Houston IAD which failed to find any violation, when in fact, excessive force had been used against Mr. Garrett. Mr. Garrett asked for the videotape from the HPD IAD but was refused. More than two years after the alleged beating, Mr. Garrett has not received the beating videotape.

52.     On August 5, 2009, Hatice Cullingford, Ph.D. ("Dr. Cullingford"), 65, was arrested by the Houston Police Department. Dr. Cullingford had never been convicted of any crime in her life and never previously been arrested for any crime. At the City of Houston Mykawa jail, Houston jail employees used excessive force on Dr. Cullingford yet no discipline rsulted.

53.     In the late Spring of 2010, 15-year old Chad Holley was purposefully struck by a Houston police squad car and then violently beaten--by kicking, stomping and punching in the head, groin and other parts of his body--by least four Houston police officers while other Houston police officers looked on without intervention. Chad Holley was not resisting but had laid down on the ground with his hands behind his back. No officer attempted to stop the beating by the other officers and after the beating no officer reported any other officer for the incident. No use of force report was filled out by any

officer in a timely manner. The Mayor of Houston, Annise Parker, thereafter, would not allow the release of a videotape showing the incident to the public.

54.     In February, 2011, a videotape of the Chad Holley beating was released to local Houston television station KTRK, Channel 13, by a Houston citizen. Houston City Mayor Annise Parker then threatened the citizen and berated KTRK Channel 13: "Whoever provided the video to Channel 13 is in violation of a federal court order and should be prosecuted." The citizen was not a party to the lawsuit nor was any protective order directed at the citizen.

55.     On February 8, 2011, at a Houston City Council public meeting discussing the Chad Holley excessive force incident and past police excessive force incidents, Houston City Attorney David Feldman interrupted Houston City Councilpersons, such as Melissa Noriega, who were talking about the videotape of Holley and past instances of police brutality that could affect city liability. Mr. Feldman then instructed the City council to not to talk about the Chad Holley case. This was a sentiment Mayor Parker also verbalized. Council member Noriega agreed and stopped talking about excessive force events as did the Mayor and other City Councilpersons. For the past twenty years there have been excessive force cases against the City pending at all times, so under this policy the council members cannot speak about excessive force cases in public meeting.

## VIOLATION OF THE 4TH AND 14TH FOURTEENTH AMENDMENTS

56.     Plaintiff incorporates all preceding paragraphs as if set fully set forth herein.

57.     The Fourth Amendments guarantees everyone the right "to be secure in their

persons, houses, papers, and effects, against unreasonable searches and seizures." *U.S. Const. amend. IV*. The 14th Amendment allows for due process of law. Such violations are actionable pursuant to 42 U.S.C. Section 1983 and 1988.

58.     The force used by the individually named defendants and the method of searching Mr. Howard was in great excess to the need to use such force and method of search constituted an Unreasonable Seizure of Mr. Howard and violated his due process rights under the 14th Amendment including to bodily integrity.

59.     The City of Houston has a custom, policy, practice, and procedure of using excessive force on individuals and not disciplining or training officers adequately and is therefore liable under 42 U.S.C. Section 1983 and 1988. There is a pattern and practice of excessive force and condoning excessive force. There is a pattern and practice of charging suspects with resisting arrest, failure to identify, assault on a peace officer, and other crimes to cover up excessive force.

## ASSAULT AND BATTERY

60.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

61.     The individually named defendant committed assault upon Mr. Howard and caused the damages described herein.

## LIABILTY FOR FAILURE TO INTERVENE

62.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

63.     A law enforcement officer "who is present at the scene and does not take

reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983." *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). Although *Hale* most often applies in the context of excessive force claims, this Court recognized that other constitutional violations also may support a theory of bystander liability. *Whitley v. Hanna*, 726 F.3d 631, 646 n. 11 (5th Cir. 2013)(citing *Richie v. Wharton County Sheriff's Dep't Star Team*, No. 12–20014, 2013 WL 616962, at *2 (5th Cir. Feb. 19, 2013)(per curiam) (unpublished)(noting that plaintiff failed to allege facts suggesting that officers "were liable under a theory of bystander liability for failing to prevent ... other member[s] from committing constitutional violations")). Further, the Second Circuit has stated that "law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir.1994). *See* also, *Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972)("we believe it is clear that one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge."). Thus, all present HPD officers may be liable under § 1983 under a theory of bystander liability when the officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Whitley*, 726 F.3d at 646.

## **MENTAL ANGUISH**

64.     Plaintiff incorporates all preceding paragraphs as if set fully set forth herein.

65.     Mr. Howard suffered at least anxiety, fear, anger and depression because of the acts of the individually named defendants and the City of Houston and, therefore, and seeks damages for mental anguish past and future as well as the pain and suffering, past and future, and other damages set forth above.

## PUNITIVE DAMAGES

66.     Plaintiff incorporates all preceding paragraphs as if set fully herein.

67.     The individually named defendants actions and inactions cause them to be liable for punitive damages as they were consciously indifferent to the plaintiff's constitutional rights and they did the acts knowingly, such acts being extreme and outrageous and shocking to the conscious.

## ATTORNEYS' FEES

68.     Plaintiff is entitled to recover attorneys' fees and costs to enforce his Constitutional rights and under 42 U.S.C. Sections 1983 and 1988.

## JURY TRIAL

69.     Plaintiff requests a trial by jury on all issues triable to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Aundre Howard requests that the Court:

A.     Enter judgment for the plaintiff and against the individual defendants and the

PLAINTIFF'S 1st AMENDED ORIGINAL COMPLAINT                     Page 20

City of Houston holding them jointly and severally liable;

B.     Find that Plaintiff is the prevailing party in this case and award attorneys'

fees and costs, pursuant to federal law, as noted against all defendants;

C.     Award damages to Plaintiff for the violations of his Constitutional rights;

D.     Award Pre- and post-judgement interest;

E.     Award Punitive damages against each and every individually named

defendant, and

F.     Grant such other and further relief as appears reasonable and just, to which

plaintiff shows himself entitled.

Respectfully Submitted,

*/s/ Randall L. Kallinen*
Randall L. Kallinen
Kallinen Law PLLC
State Bar of Texas No. 00790995
Southern District of Texas Bar No.: 19417
511 Broadway Street
Houston, Texas 77012
Telephone:   713.320.3785
FAX:          713.893.6737
E-mail:        AttorneyKallinen@aol.com
Attorney for Plaintiff