United States District Court
Southern District of Texas
**ENTERED**
February 16, 2022
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| Aundre Howard, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action H-21-1179 |
| | § | |
| City of Houston, Texas, *et al.,* | § | |
| | § | |
| *Defendants.* | § | |

## Memorandum Opinion and Order

Pending before the court is defendant the City of Houston's ("the City") Rule 12(f) motion to strike (Dkt. 35) and Rule 12(b)(6) motion to dismiss (Dkt. 34) along with Rule 12(b)(6) motions to dismiss filed by defendants former Chief of Police Art Acevedo ("Chief Acevedo") (Dkt. 33), Houston Police Department ("HPD") Officer Thomas Serrano ("Officer Serrano") (Dkt. 42), HPD Officer Nadeem Aslam ("Officer Aslam") (Dkt. 31), and HPD Sergeant Earl Attebury ("Sgt. Attebury") (Dkt. 32). Having considered the motions, responses, replies, and the applicable law, the court is of the opinion that the motion to strike (Dkt. 35) should be DENIED; the motions to dismiss filed by the City (Dkt. 34), Chief Acevedo (Dkt. 33), and Officer Serrano (Dkt. 42) should be GRANTED IN PART AND DENIED IN PART; and the motions to dismiss filed by Officer Aslam (Dkt. 31) and Sgt. Attebury (Dkt. 32) should be GRANTED.

## I. Background

This case involves allegations that HPD officers violated plaintiff Aundre Howard's ("Howard") Fourth and Fourteenth Amendment rights during a traffic stop in the summer of 2019. Dkt. 28 ¶¶ 8–9. Howard alleges the following facts in his first amended complaint, which the court takes as true for this motion.

On July 7, 2019, HPD Officer Lucas L. Vieira ("Officer Vieira") and Officer Serrano stopped Howard for driving with expired registration. *Id.* ¶¶ 8, 10. Officer Vieira instructed Howard to exit the vehicle. *Id.* ¶ 11. Howard complied, and Officer Vieira immediately placed him in handcuffs. *Id.* Officer Serrano performed an initial search for weapons and found none. *Id.* ¶ 12. After taking Howard to the squad car, Officer Serrano allegedly put on gloves to perform a body cavity search. *Id.* ¶ 13. Frightened at this development, Howard ran from Officer Serrano despite still being handcuffed. *Id.* Officers Vieira and Serrano immediately gave chase, with Officer Vieira allegedly yelling for Officer Serrano to shoot Howard and shouting, "BOP BOP BOP BOP" to mimic the sound of gunfire. *Id.* ¶ 14. Howard was so terrified that he defecated. *Id.* ¶ 14. The officers easily caught the handcuffed and much slower Howard before running a full block. *Id.* ¶¶ 13, 15.

When Officer Viera caught up with Howard, he allegedly used a pair of handcuffs as "brass knuckles" and beat Howard on the back of the head with them at least three times. *Id.* ¶ 15. With Howard now on the ground, an unknown HPD officer arrived while Officer Vieira allegedly threatened Howard with references to the previous beating. *Id.* ¶¶ 16–17. After Howard was back on his feet, Officer Vieira allegedly poked at his head. *Id.* ¶ 18. Officer Serrano allegedly watched all of this transpire without intervening. *Id.* ¶ 15.

During the walk back to the squad car, Officers Vieira and Serrano allegedly pressed down on Howard's head, causing pain. *Id.* ¶ 19. HPD officers, including Officers Vieira and Serrano, allegedly slammed Howard against the squad car's hood and pulled down his pants, exposing his buttocks, genitals, and feces to public view. *Id.* ¶ 20. The officers then allegedly forced Howard

to the pavement, causing contusions to his face. *Id.* Howard was forced to remain on the pavement for an extended period, with his buttocks, genitals, and feces exposed to public view. *Id.* ¶ 21.

Officer Aslam arrived and searched the vehicle while Howard was still lying exposed on the pavement and did not intervene. *Id.* Sgt. Attebury arrived, saw Howard lying exposed on the pavement, and did not intervene. *Id.* ¶ 23. Officer Vieira allegedly admitted to Sgt. Attebury that he used handcuffs to beat Howard and had threatened to shoot him. *Id.* Sgt. Attebury allegedly did not report any HPD officer for the use of excessive force, conducting an illegal strip search, or any other violations. *Id.* Allegedly, no HPD officer reported a violation of any HPD regulation relating to this incident. *Id.* ¶ 24.

Howard alleges that the City has a long and documented history of excessive force, that HPD officers routinely use more force than is necessary, and the City actively attempts to conceal the facts surrounding the use of excessive force. *Id.* ¶ 26. Howard's first amended complaint alleges numerous specific incidents to establish this pattern of excessive force. *Id.* ¶¶ 28–59. Among the alleged facts are thirty-five alleged incidences of excessive force in the City's jails. *Id.* ¶¶ 30–32, 35, 52, 55, 56. Of those thirty-five incidents, five explicitly allege the involvement of HPD officers. *Id.* ¶¶ 31, 35. Additionally, there were four incidents between 2002 and 2017 of alleged excessive physical force by HPD officers without using a firearm. *Id.* ¶¶ 29, 44, 54, 57. And eleven incidents between 1998 and 2007 of alleged excessive physical force by HPD officers with a firearm. *Id.* ¶¶ 39–42, 45–51. Further, Howard alleges that over two-hundred-fifty more incidences involving HPD's use of firearms may involve excessive force but have not been subject to investigation. *Id.* ¶ 33. The City Council is also alleged to have known of and discussed HPD's pattern of excessive force at least once in a public meeting in 2011. *Id.* ¶ 59.

3

Howard's first amended complaint alleges that Chief Acevedo was HPD's Chief of Police from December 2016 to April 2021.  *Id.* ¶¶ 28, 38.  Chief Acevedo is alleged to have known and approved the use of excessive force by HPD officers and took steps to keep six police shootings internal.  *Id.* ¶ 27.  Chief Acevedo's policy allegedly emboldened HPD officers to engage in excessive force without fear of repercussion.  *Id.* ¶ 26.  Chief Acevedo's policy of shielding officers is allegedly the explanation for why Officer Vieira avoided disciplinary action until Chief Troy Finner—Chief Acevedo's successor—suspended him indefinitely for the events alleged shortly after taking office in 2021.  *Id.* ¶¶ 28.  In contrast, Chief Acevedo allegedly took no action with Officer Vieira for almost two years.  *Id.*

## II. LEGAL STANDARD

### A.  Motion to Strike

A party may move to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "[T]he action of striking a pleading should be sparingly used" and "only when the pleading to be stricken has no possible relation to the controversy." *Augustus v. Bd. of Pub. Instruction of Escambia Cnty., Fla.*, 306 F.2d 862, 868 (5th Cir. 1962).  A motion to strike should be denied when "the disputed statements [are] material and pertinent to the underlying controversy" even when they "might offend the sensibilities" of the other party.  *United States v. Coney*, 689 F.3d 365, 379 (5th Cir. 2012).

### B.  Motion to Dismiss

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007).  In considering a Rule 12(b)(6) motion to dismiss a complaint, courts

4

generally must accept the factual allegations contained in the complaint as true. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). The court does not look beyond the face of the pleadings in determining whether the plaintiff has stated a claim under Rule 12(b)(6). *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [but] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).

The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* The supporting facts must be plausible—enough to raise a reasonable expectation that discovery will reveal further supporting evidence. *Id.* at 556. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009).

## III. ANALYSIS

### A. The City's Rule 12(f) Motion to Strike

The City seeks to strike thirty-two paragraphs of Howard's first amended complaint under Rule 12(f) as "nothing more than a rambling list of bad acts . . . that are immaterial to Howard's allegations." Dkt. 35 ¶ 6. After examining Howard's first amended complaint, the court concludes that the relevant paragraphs plead specific facts supporting an alleged culture and pattern of excessive force and an alleged policy of shielding HPD officers from accountability for the use of excessive force. *See* Dkt. 28 ¶¶ 27, 29–59. These allegations are material and pertinent to

5

Howard's claims against the City on a theory of *Monell* liability and against Chief Acevedo on a theory of supervisory liability.

Thus, these paragraphs have a possible relation to the controversy and should not be struck. *See Coney*, 689 F.3d at 379; *Augustus*, 306 F.2d at 868.  Therefore, the City's Rule 12(f) motion to strike is DENIED.

### B.  The City's Rule 12(b)(6) Motion to Dismiss

Howard brings a § 1983 claim under a theory of *Monell* liability against the City for alleged violations of Howard's Fourth and Fourteenth Amendment rights.  Dkt. 28 ¶¶ 61, 63. "Municipalities are persons susceptible to suit under § 1983, but they cannot be found liable on a theory of vicarious liability or respondeat superior."  *Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 395 (5th Cir. 2017), *as revised* (Mar. 31, 2017) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91, 98 S. Ct. 2018 (1978)).  "[M]unicipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom."  *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

Howard's first amended complaint alleges that Chief Acevedo, as a policymaker for the City, created or maintained a culture and pattern of excessive force within the HPD, and that the policy encouraged HPD officers to violate Howard's Fourth and Fourteenth Amendment rights. Dkt. 28 ¶¶ 27, 61–63.  The City does not dispute that Howard has alleged the first element, a policymaker.  *See* Dkt. 34.  However, the City argues that Howard's first amended complaint "lacks *any* facts that show *any* custom, pattern or practice that was the moving force behind *any*

supposed violation of Howard's constitutional rights." *Id.* ¶ 11 (emphasis original).  The court disagrees.

### 1. Alleged Constitutional Violations

Howard's § 1983 claim is based on two alleged forms of violations of his Fourth and Fourteenth Amendment rights: (1) excessive use of force and (2) an unreasonable strip search. Dkt. 28 ¶¶ 61–62.  The complaint may have attempted to limit the cause of action against the City to the excessive force claims.  *See id.* ¶ 63.  However, the potential limitation is not explicit because both forms of violations are intermingled in the same cause of action.  *See id.* ¶¶ 61–63.  Thus, the court deems it necessary to analyze both forms before turning to the elements of *Monell* liability.

#### i. Excessive Force

"[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard."  *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865 (1989).  "[D]etermining whether the force used to effect a particular seizure is 'reasonable' for purposes of the Fourth Amendment requires a careful balancing of the intrusion upon the individual's interests with the countervailing governmental interests at stake." *Tucker v. City of Shreveport*, 998 F.3d 165, 171 (5th Cir. 2021), *cert. denied sub nom. Tucker v. City of Shreveport, La.*, 142 S. Ct. 419 (2021).

The "reasonableness inquiry is an objective one."  *Winzer v. Kaufman Cnty.*, 916 F.3d 464, 474 (5th Cir. 2019) (citing *Graham*, 490 U.S. at 397).  The court must "look at the case from the perspective of a reasonable officer on the scene, paying 'careful attention to the facts and circumstances of each particular case.'"  *Escobar v. Montee*, 895 F.3d 387, 394 (5th Cir. 2018)

(quoting *Graham*, 490 U.S. at 396).  Relevant facts and circumstances include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Graham*, 490 U.S. at 396.  The "lawfulness of the arrest [is] not a material issue" for an unreasonable force claim.  *Smith v. Hearod*, 498 F.2d 663, 666 (5th Cir. 1974).

When there are distinct moments of alleged excessive force, it is proper to analyze each separately.  *See Tucker*, 998 F.3d at 171 (concluding that officers tackling a suspect and then punching and kicking him while on the ground "are 'two distinct moments of force' that must be separately analyzed").  Howard alleges four distinct moments of excessive force.  Dkt. 28 ¶¶ 15–20.  First, Officer Vieira allegedly used steel handcuffs as "brass knuckles" to beat the back of Howard's head.  *Id.* ¶ 15.  Second, after the alleged beating, Officers Vieira and Serrano allegedly poked at Howard's head and pushed it down while walking him to the squad car, causing pain.  *Id.* ¶¶ 17–18.  Third, Officers Vieira and Serrano allegedly slammed Howard against the squad car's hood and applied pain techniques to perform a public strip search.  *Id.* ¶ 20.  Fourth, Officers Vieira and Serrano forced Howard to the pavement in a manner that caused contusions to his face.  *Id.*  The court will address each moment of alleged force in turn.

Regarding the first moment, Howard alleges he was stopped for driving with expired tags, a minor offense.[1]  *Id.* ¶ 10.  Howard also alleges he never hurt or injured any HPD officer.  *Id.* ¶

---

[1]     The City stresses that Howard was arrested for possession of crack-cocaine, a more serious offense.  Dkt. 34 ¶ 1.  When ruling on a Rule 12(b)(6) motion, "the court may not look beyond the pleadings."  *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  Howard's first amended complaint is silent as to the existence of drugs, the relationship of the drug charges to the stop, when drugs were discovered, or how the presence of drugs impacted the arrest and the alleged excessive force.  *See* Dkt. 28.  Thus, the court's analysis is limited to the allegations that the stop concerned expired

9.  However, Howard does admit to fleeing while in handcuffs after Officer Serrano allegedly prepared to conduct a public cavity search.  *Id.* ¶ 13.  Officer Vieira allegedly caught Howard easily and without placing anyone at risk of harm.  *Id.* ¶ 13.  After Officer Vieira caught the already restrained Howard, he then used steel handcuffs as "brass knuckles" to strike Howard's head at least three times.  Id. ¶ 15.  Under these circumstances, the court concludes that the alleged beating is an application of force that is clearly beyond what any reasonable officer would apply in the situation.  Thus, Howard has pleaded plausible facts sufficient to raise relief above the speculative level for his § 1983 excessive force claim for the first moment.

The second and third moments are significantly different because the only alleged injury is temporary pain without lasting effect.  *See id.* ¶¶ 17–20.  While Howard need not allege a significant injury for an excessive force claim, he must allege an injury that is "more than *de minimis.*"  *See Tarver v. City of Edna*, 410 F.3d 745, 752 (5th Cir. 2005) (holding that pain and bruising on the arrestee's wrists from handcuffing were *de minimis* injuries and could not support an excessive force claim).  In the second moment, the only injury alleged is pain while Officers Vieira and Serrano poked and pushed down Howard's head.  Dkt. 28 ¶ 17–18.  This temporary pain without lasting effects is less severe than the pain and bruising the Fifth Circuit classified as *de minimis* in *Tarver*.  *See* 410 F.3d at 752.  Thus, Howard has not alleged facts to support an excessive force claim for the actions during the walk back to the squad car.

Similarly, for the third moment, the only alleged injury from the slam against the squad car and the following search is temporary pain without lasting effect.  *Id.* ¶ 20.  Temporary pain

---

tags.  Further, the court is skeptical that the potential consideration of a drug offense is sufficient to alter the conclusion of the reasonableness analysis without further factual development.

without lasting effect does not rise above a *de minimis* injury.  *See Tarver*, 410 F.3d at 752.  Thus, Howard has not alleged facts to support an excessive force claim for being slammed against the squad car and the subsequent search.

The fourth moment of alleged excessive force is a closer call.  Howard alleges that HPD officers—including Officers Vieira and Serrano—forced him to the pavement after being searched and the impact with the pavement caused contusions to his face.  Dkt. 28 ¶ 20.  The alleged injury in an excessive force claim must be more than *de minimis*, but "there is no categorical requirement that the physical injury be significant, serious, or more than minor."  *Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir. 1999).  Howard needs only to plead facts sufficient to "raise a right to relief above the speculative level."  *See Twombly*, 550 U.S. at 555.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

Howard alleges he was forced to the pavement with sufficient force to leave contusions on his face.  Dkt. 28 ¶ 20.  Alleging force to the pavement sufficient to cause facial contusions supports the reasonable inference that Howard suffered head trauma.  *See Iqbal*, 556 U.S. at 678. The court concludes that Howard's first amended complaint provides facts sufficient to allege an injury in the form of head trauma that is more than *de minimis.*

While Howard admits that he initially ran from Officer Serrano, the fourth moment of force occurred while he was allegedly fully compliant and restrained after having suffered a beating to his head and been publicly strip-searched.  Dkt. 28 ¶¶ 8–20.  Under such circumstances, no reasonable officer would force an arrestee to the ground with such force as to cause further head

trauma.  Thus, Howard has pleaded facts sufficient to raise relief above the speculative level for his § 1983 excessive force claim in the fourth moment.  *See Twombly*, 550 U.S. at 555.

### ii.  Public Strip Search

"The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'"  *United States v. Knights*, 534 U.S. 112, 118–19, 122 S. Ct. 587 (2001) (quoting *Wyoming v. Houghton*, 526 U.S. 295, 300, 119 S. Ct. 1297 (1999)).  As the invasiveness of a search increases, the Fourth Amendment requires greater justification to be reasonable.  *See Illinois v. Lafayette*, 462 U.S. 640, 645, 103 S. Ct. 2605 (1983) ("the interests supporting a search incident to arrest would hardly justify disrobing an arrestee on the street, but the practical necessities of routine jail administration may even justify taking a prisoner's clothes before confining him"); *United States v. Vega-Barvo*, 729 F.2d 1341, 1344 (11th Cir. 1984) ("As intrusiveness increases, the amount of suspicion necessary to justify the search correspondingly increases.").

When determining the reasonableness of a strip search, the court "must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted."  *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S. Ct. 1861 (1979).  "Courts across the country are uniform in their condemnation of intrusive searches performed in public."  *Campbell v. Miller*, 499 F.3d 711, 719 (7th Cir. 2007) (collecting cases); *see also United States v. Peters*, 843 F.Appx. 369 (2d Cir. 2021) ("courts have universally condemned public strip searches as unreasonable") (unpublished); *Robinson v. Hawkins*, 937 F.3d 1128, 1137–38 (8th Cir.

11

2019) ("clearly established law holds that strip searches are to be conducted . . . 'in an area as removed from public view as possible without compromising legitimate security concerns'" (quoting *Richmond v. City of Brooklyn Ctr.*, 490 F.3d 1002, 1008 (8th Cir. 2007)).   The Fifth Circuit has made it clear that potential threats to officer safety do not justify a strip search in public when the suspect has already been handcuffed and patted down.   *Williams v. Kaufman Cnty.*, 352 F.3d 994, 1004 (5th Cir 2003).

Howard alleges that HPD officers—including Officers Vieira and Serrano—subjected him to a public strip search by pulling down his pants and shorts while he was restrained against the squad car, revealing his buttocks, genitals, and feces.   Dkt. 28 ¶ 20.   Howard was then forced to the pavement, where his buttocks, genitals, and feces remained exposed to public view for an extended period.   *Id.* ¶¶ 20–24.   The strip search allegedly occurred after Howard had already been handcuffed and searched for weapons.   *Id.* ¶¶ 8, 11–12.   The court concludes that the alleged public strip search is clearly unreasonable.

Howard has pleaded plausible facts sufficient to raise relief above the speculative level for his § 1983 claim for an unreasonable strip search.   *See Twombly*, 550 U.S. at 555.   Therefore, Howard has plausibly alleged three violations of his Fourth and Fourteenth Amendment rights: two violations for excessive force and one violation for an unreasonable strip search.

### 2.  Alleged Official Policy

Howard's first amended complaint must allege an official municipal policy to satisfy the second element of *Monell* liability.   *See Piotrowski*, 237 F.3d at 578.   A municipal policy can be shown in one of three ways: (1) with "written policy statements, ordinances, or regulations;" (2) "a widespread practice that is so common and well-settled as to constitute a custom that fairly

represents municipal policy;" or (3) in "rare circumstances" a single decision may suffice when "the official or entity possessing 'final policy making authority' for an action 'performs the specific act that forms the basis of the § 1983 claim.'" *Webb v. Town of Saint Joseph*, 925 F.3d 209, 215 (5th Cir. 2019) (quoting *Davidson*, 848 F.3d at 395). Howard's first amended complaint contains no allegations that would support the first or third categories and must be analyzed as an allegation of a widespread practice. *See* Dkt. 28.

An alleged widespread practice must be "so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61, 131 S. Ct. 1350 (2011). Howard must show a pattern with "similarity, specificity, and sufficiently numerous prior incidents" to establish a municipal policy based on widespread practice. *See Davidson*, 848 F.3d at 396. A plaintiff relying on a theory of widespread practice must also allege "'[a]ctual or constructive knowledge of such custom' by the municipality or the official who had policymaking authority." *Hicks-Fields v. Harris Cnty., Tex.*, 860 F.3d 803, 808 (5th Cir. 2017) (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984)).

### i. Widespread Practice of Excessive Force

A large portion of the complaint is spent alleging numerous incidents of excessive force to show a widespread practice that amounts to an official municipal policy. *See* Dkt. 28 ¶¶ 28–59. Thirty-five of the alleged incidents of excessive force occurred in jails. Dkt. 28 ¶¶ 30–32, 35, 52, 55, 56. Of those thirty-five incidents, five explicitly allege the involvement of HPD officers. *Id.* ¶¶ 31, 35. Moreover, there are four alleged incidents of HPD officers using excessive force without a firearm between 2002 and 2017. *Id.* ¶¶ 29, 44, 54, 57. Additionally, there are eleven alleged incidents of HPD officers using excessive force with a firearm between 1998 and 2007. *Id.*

13

¶¶ 39–42, 45–51.  Chief Acevedo is alleged to have known and approved of this use of excessive force as illustrated by actions taken to keep six prior police shootings internal and by contrasting his actions with those of his successor.  *Id.* ¶¶ 27–28.  Finally, the City Council is alleged to have known of and discussed HPD's pattern of excessive force during a public meeting in 2011.  *Id.* ¶ 59.

The City makes three objections to Howard's allegation of a widespread practice of excessive force.  Dkt. 34 ¶¶ 8–15.  First, the City claims Howard's pleadings are conclusory.  *Id.* ¶ 8.  The court concludes that specific, factual allegations of over fifty separate instances of excessive force are not conclusory.  Second, the City correctly notes that proving a pattern is difficult and cites several Fifth Circuit cases to illustrate that difficulty.  Dkt. 34 ¶ 12.  Critically, every case the City cites to show the difficulty in proving a pattern is an appeal of summary judgment, not a Rule 12(b)(6) motion to dismiss.  *See* Dkt. 34 ¶ 12.  To survive a Rule 12(b)(6) motion, Howard need not prove the pattern exists; instead, he must allege plausible facts that raise his right to relief above the speculative level.  *See Twombly*, 550 U.S. at 555.  Howard's first amended complaint alleges facts for over fifty instances of excessive force and indicates that there are over two-hundred-fifty additional potential incidents of excessive force that may be used to prove the pattern at the appropriate stage of litigation.  Dkt. 28 ¶¶ 28–59.  The court concludes that Howard's first amended complaint plausibly alleges facts in support of a widespread practice that raise his right to relief above the speculative level.

Third, the City argues that the specificity requirement for an alleged widespread practice is so narrow that excessive force cases involving police officers shooting suspects, hitting suspects with a squad car, or performing a leg sweep do not establish a policy of excessive force that

14

encompasses Officer Vieira's alleged beating Howard with handcuffs.  Dkt. 34 ¶ 13.  The City

cites *Clark v. Thompson*, 850 Fed.App'x. 203 (5th Cir. 2021) (per curiam) (unpublished) in support

of this extremely narrow specificity requirement.  *Id.*  In *Clark*, the plaintiff brought § 1983 claims

against two police officers for false arrest and excessive force.  850 Fed.App'x at 205.  The *Clark*

plaintiff also brought a *Monell* claim against the City of Burleson alleging a widespread practice

of "systematically permitting its officers to violate citizens' constitutional rights on behalf of

friends and romantic partners."  *Id.*  The *Clark* plaintiff pointed to fifty-five administrative

complaints and twenty-seven Internal Affairs complaints to support the allegation of the

widespread practice.  *Id.*  The Fifth Circuit concluded the *Clark* plaintiff did not adequately allege

a policy or custom because there was nothing alleged "would permit a court to plausibly infer that

even a single one of the prior complaints had anything to do with officers doing favors for friends

and romantic partners, with wrongful arrests, or with any other aspect of his claim."  *Id.* at 208.

The City's reliance on this unpublished opinion is misplaced because the holding of *Clark*

is not based on an extremely narrow specificity requirement.  *See id.*  Instead, the Fifth Circuit

found no official policy in *Clark* because the only facts alleged were those of the incident that gave

rise to injury "plus speculation and conclusory allegations in support of a custom."  *Id.*  The same

is not the case here, where Howard has described over fifty alleged incidents of excessive force.

Dkt. 28 ¶¶ 28–59.  The plaintiff in *Clark* did not allege facts to show that any of the eighty-eight

complaints matched the alleged widespread practice but was merely "confident discovery [would]

produce . . . a sufficient number of stories like his own."  850 Fed.App'x. at 208.  In contrast,

Howard has alleged over fifty incidents with sufficient detail to show that they match the alleged

widespread practice.  Dkt. 28 ¶¶ 28–59.  Thus, the court concludes *Clark* is not persuasive

authority for the position that the alleged widespread practice does not meet the specificity requirement.

The City points to no other authority requiring the court to analyze the specificity requirement in such an extreme manner.  *See* Dkt. 34.  Thus, the court concludes that Howard's first amended complaint alleges facts with similarity, specificity, and sufficiently numerous prior incidents to support a widespread practice of excessive force.  *See Davidson*, 848 F.3d at 396. Therefore, Howard's first amended complaint has alleged a widespread practice of excessive force that is so common and well-settled as to constitute a custom that fairly represents municipal policy. *See Webb*, 925 F.3d at 215.

### ii.  *Widespread Practice of Unreasonable Strip Searches*

While Howard's first amended complaint includes a detailed list of excessive force claims, it does not show that the City engaged in a widespread pattern of unreasonable strip searches.  *See* Dkt. 28.  The alleged strip search of Howard is the only unreasonable search mentioned.  *See id.* This single instant cannot support an allegation of a widespread practice.  *See Davidson*, 848 F.3d at 396.  Further, the decision to conduct a public strip search of Howard was not alleged to be that of a policymaker and cannot fulfill the requirements for the "rare circumstance" where the policymaker's decision establishes the existence of an official policy.  *See Webb*, 925 F.3d at 215. Thus, the court determines that Howard's first amended complaint does not allege an official policy of conducting unreasonable strip searches.

### 3.  **Alleged Policy was a Moving Force**

Finally, Howard's first amended complaint must allege that the official policy was a "moving force" of the constitutional violation.  *See Piotrowski*, 237 F.3d at 578.  The "moving

force" element of requires plaintiffs to allege a "causal link" and is intended to prevent *Monell* liability from "collaps[ing] into respondeat superior liability." *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998). Howard specifically alleges that a policy of shielding HPD officers from accountability emboldens them to use excessive force. Dkt. 28 ¶ 26. Further, Howard's first amended complaint contains factual pleadings of over fifty instances of excessive force to allege that the City engaged in the widespread use of excessive force that fairly represents municipal policy. *Supra*, III(B)(2)(i). These factual allegations allow the court to draw the reasonable inference for the purposes of a Rule 12(b)(6) motion that the alleged policy emboldened Officers Vieira and Serrano in their actions and was thus a moving force for the alleged constitutional violations. *See Iqbal*, 556 U.S. at 678.

Thus, the court concludes that Howard's first amended complaint successfully alleges the elements of *Monell* liability for two instances of excessive force, but not for the unreasonable strip search. Therefore, the City's motion to dismiss (Dkt. 34) IS GRANTED IN PART AND DENIED IN PART. The motion is GRANTED in so far as the complaint can be construed to allege a *Monell* claim for the unreasonable strip search and the excessive force claims for the restraint while walking Howard back to the squad car and applied during the search. The motion is DENIED for the *Monell* claims for excessive force in the alleged beating of Howard with handcuffs and the alleged post-search force applied to bring Howard to the pavement.

### C. Chief Acevedo's Rule 12(b)(6) Motion to Dismiss

Howard brings § 1983 claims against Chief Acevedo under theories of supervisory liability and bystander liability along with a state-law claim for assault and battery. Dkt. 28 ¶¶ 60–67.

Chief Acevedo moves to dismiss for failure to state a claim upon which relief can be granted for all causes of action.  Dkt. 33.  The court agrees in part and disagrees in part.

### 1.  Supervisory Liability

"A supervisory official may be held liable under § 1983 only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury."  *Gates v. Tex. Dep't of Protective & Regul. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008).  Chief Acevedo makes two objections regarding the supervisory liability claim and invokes qualified immunity.  Dkt. 47 ¶¶ 2, 8, 13.  The court will address each issue in turn.

Chief Acevedo first objects that Howard's first amended complaint does not specifically allege supervisory liability for the § 1983 claim.  *Id.* ¶ 2.  This objection is not grounds to dismiss for failure to state a claim.  Howard's stated cause of action is a § 1983 claim for alleged violations of his Fourth and Fourteenth Amendment rights.  Dkt. 28 ¶¶ 60–62.  Supervisory liability for implementing unconstitutional policies is a legal theory of that claim.  *See Gates*, 537 F.3d at 435.  And "a complaint need not pin plaintiff's claim for relief to a precise legal theory."  *Skinner v. Switzer*, 562 U.S. 521, 530, 131 S. Ct. 1289 (2011).  Rather, Howard's first amended complaint need only plead facts that "raise a right to relief above the speculative level."  *See Twombly*, 550 U.S. at 555.  Thus, Chief Acevedo's first objection is overruled.

Chief Acevedo next objects that Howard's § 1983 claim fails because he does not allege Chief Acevedo's personal involvement in the incident.  Dkt. 33 ¶ 13.  This objection is also inadequate to support a motion to dismiss.  Affirmative participation in the events is one way to establish supervisory liability but creating "unconstitutional policies that causally result in the

constitutional injury" is another.  *Gates*, 537 F.3d at 435.  Howard's first amended complaint makes factual allegations to support the latter theory.  *See* Dkt. 28 ¶¶ 27–29.  Thus, Chief Acevedo's second objection is overruled.

The central argument of Chief Acevedo's motion to dismiss is based on qualified immunity.  Dkt. 33 ¶ 8.  "A public official is entitled to qualified immunity unless the plaintiff demonstrates that (1) the defendant violated the plaintiff's constitutional rights and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation."  *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011).  The court may exercise its "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in the light of the circumstances in the particular case at hand."  *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808 (2009).  The court will address the alleged violation of constitutional rights first.

### i. Constitutional Violation

The court has already established that Howard's first amended complaint alleges two instances of excessive force and an unreasonable strip search in violation of his Fourth and Fourteenth Amendment rights.  *Supra*, III(B)(1).  Chief Acevedo is also liable for these alleged violations if he acted unreasonably in creating a policy that caused the violation of Howard's constitutional rights.  *See Hinojosa v. Livingston*, 807 F.3d 657, 669 (5th Cir. 2015) (concluding that prison supervisors were not entitled to qualified immunity for promulgating policies that violated Eighth Amendment rights of inmates).

Howard's first amended complaint makes no allegation that Chief Acevedo implemented a policy directing HPD officers to conduct public strip searches.  *See* Dkt. 28.  Thus, Chief

Acevedo is entitled to qualified immunity for the § 1983 claim for an unreasonable strip search. Therefore, Chief Acevedo's motion to dismiss is GRANTED regarding the § 1983 claim for an unreasonable strip search.

Howard's first amended complaint alleges that Chief Acevedo was HPD's Chief of Police from December 2016 to April 2021.  Dkt. 28 ¶¶ 28, 38.  Chief Acevedo allegedly knew of and perpetuated a "culture and pattern of abiding and secreting away instances of excessive force."  *Id.* ¶ 27.  Specifically, it is alleged that Chief Acevedo attempted to keep six police shootings from public view.  *Id.*  Additionally, Chief Acevedo and his predecessors allegedly prevented investigations into whether over two-hundred-fifty incidences of HPD officers' use of firearms constituted excessive force.  *Id.* ¶ 33.  Howard alleges the policy of shielding HPD officers is further shown by the lack of disciplinary action taken against Officer Vieira for the alleged events compared with the decisive disciplinary action taken by Chief Acevedo's successor.  *Id.* ¶¶ 28. Chief Acevedo's policy allegedly emboldened HPD officers to engage in excessive force without fear of repercussion.  *Id.* ¶ 26.

Additionally, for Chief Acevedo's alleged policy to create supervisory liability, Howard must allege that this policy caused his injury.  *Gates*, 537 F.3d at 435.  Howard's first amended complaint does not contain a formal recitation of this element as an allegation.  *See* Dkt. 28. However, "pleading standards don't demand such precision in terminology or any magic words." *Boudreaux v. La. State Bar Ass'n*, 3 F.4th 748, 756 (5th Cir. 2021).  The alleged facts and overall complaint are sufficient to establish that Howard alleges that Chief Acevedo's policy caused his injury.  *See* Dkt. 28.  Thus, Howard's allegations are sufficient to "raise a right to relief above the speculative level."  *See Twombly*, 550 U.S. at 555.

The analysis of qualified immunity "does not require that the plaintiff's original complaint exceed the short-and-plain-statement standard" but the plaintiff "must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020). The court determines that the alleged facts meet this standard and successfully plead that Chief Acevedo allegedly implemented a policy condoning excessive force and shielding HPD officers from accountability and this policy caused the violations of Howard's Fourth and Fourteenth Amendment rights.

### ii.  Clearly Established

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034 (1987)). "Generally, to satisfy this standard, the plaintiff must identify a case in which an officer acting under similar circumstances was held to have violated the Constitution, and explain why the case clearly proscribed the conduct of that individual officer." *Cope v. Cogdill*, 3 F.4th 198, 205 (5th Cir. 2021)) (cleaned up). But a government official "who commits a patently obvious violation of the Constitution is not entitled to qualified immunity" even if the plaintiff does not "cite binding case law involving identical facts." *Villarreal v. City of Laredo, Tex.*, 17 F.4th 532, 540 (5th Cir. 2021). "In other words, immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (quoting *Mullenix v. Luna*, 577 U.S. 7, 13, 136 S. Ct. 305 (2015)).

"It [is] clearly established that [arrestees have] a constitutional right to be free from excessive force during an investigatory stop or arrest." *Tarver*, 410 F.3d at 753–54 (citing *Graham*, 490 U.S. at 393–94).  Chief Acevedo allegedly knew of and perpetuated a "culture and pattern of abiding and secreting away instances of excessive force." Dkt. 28 ¶ 27.  Howard's first amended complaint supports this by alleging specific facts describing instances where Chief Acevedo shielded HPD officers from accusations of excessive force.  *See id.* ¶¶ 26–28, 33, 38.  The court concludes that the allegations of maintaining or creating a policy designed to shield officers from accountability for and encourage the use of excessive force during an investigatory stop or arrest is a patently obvious violation that every reasonable official would know violates the Fourth and Fourteenth Amendment rights of those stopped or arrested.  Therefore, Chief Acevedo is not entitled to qualified immunity for the § 1983 claim for excessive force.  *See Villarreal*, 17 F.4th at 540;

### 2.  Other Claims

Howard's first amended complaint also brings a § 1983 claim under a theory of bystander liability and a state-law assault and battery claim against Chief Acevedo.  Dkt. 28 ¶¶ 64–67.  The elements of both claims require the plaintiff to allege that the defendant was present at the time of the incident.  *See Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995) ("an officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983" under a theory of bystander liability); *see also Loaisiga v. Cerda*, 379 S.W.3d 248, 256 (Tex. 2012) ("The elements of civil assault mirror those of criminal assault.").  Chief Acevedo is not alleged to have been present at the scene of the

incident at any time.  *See* Dkt 28.  Thus, Howard has failed to state a claim for bystander liability

or state-law assault and battery.

Therefore, Chief Acevedo's motion to dismiss (Dkt. 33) is GRANTED IN PART AND

DENIED IN PART.  It is GRANTED regarding the § 1983 claim for the strip search under a theory

of supervisor liability, the § 1983 claim for excessive force under a theory of bystander liability,

and the state-law assault and battery claim.  The motion is DENIED regarding the § 1983 claim

for excessive force under a theory of supervisor liability.

### D.  Officer Serrano's Rule 12(b)(6) Motion to Dismiss

Howard brings § 1983 claims against Officer Serrano for excessive force, an unreasonable

strip search, and bystander liability, along with a state-law claim for assault and battery.  Dkt. 28

¶¶ 60–67.  Officer Serrano moves to dismiss for failure to state a claim upon which relief can be

granted for all causes of action.  Dkt. 42.  The court agrees in part and disagrees in part.

### 1.  Qualified Immunity for the § 1983 Claims

Officer Serrano invokes qualified immunity for the § 1983 claims.  *Id.* ¶¶ 26–31.  There

are two prongs to analyzing a qualified immunity claim: "(1) the defendant violated the plaintiff's

constitutional rights and (2) the defendant's actions were objectively unreasonable in light of

clearly established law at the time of the violation."  *Porter*, 659 F.3d at 445.  The court has already

addressed the first prong and determined that there are three alleged constitutional violations: (1)

Officer Serrano allegedly engaged in excessive force by forcing Howard to the ground, causing

contusions to his face; (2) Officer Serrano allegedly conducted an unreasonable strip search; and

(3) Officer Serrano was a bystander while Officer Vieira allegedly engaged in excessive force by

beating Howard with handcuffs.  *Supra*, III(B)(1).  Thus, the court must analyze the "clearly established" prong for each alleged violation.

### i. Excessive Force

"It [is] clearly established that [arrestees have] a constitutional right to be free from excessive force during an investigatory stop or arrest." *Tarver*, 410 F.3d at 753–54.  However, the court is "not to define clearly established law at a high level of generality."  *City & County of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 613, 135 S. Ct. 1765 (2015) (quoting *al-Kidd*, 563 U.S. at 742).  "Use of excessive force is an area of the law 'in which the result depends very much on the facts of each case,' and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (quoting *Mullenix v. Luna*, 577 U.S. 7, 13, 136 S. Ct. 305 (2015)).

"To defeat qualified immunity, a plaintiff must demonstrate that it would be clear to a reasonable officer that his conduct was unlawful *in the situation he confronted*." *Shumpert v. City of Tupelo*, 905 F.3d 310, 321 (5th Cir. 2018) (quotations omitted and emphasis original).  "Generally, to satisfy this standard, the plaintiff must identify a case in which an officer acting under similar circumstances was held to have violated the Constitution, and explain why the case clearly proscribed the conduct of that individual officer."  *Cope*, 3 F.4th at 205.

Howard's first amended complaint alleges Officer Serrano violated his Fourth and Fourteenth Amendment rights when he was unreasonably forced to the pavement after a search causing contusions to his face.  Dkt. 28 ¶ 20.  Generally, Howard must cite a case "in which an officer acting under similar circumstances was held to have violated the Constitution." *Cope*, 3 F.4th at 205.  Howard cites no such case. *See* Dkt. 44.  Instead, Howard cites five cases for the

general proposition that "unnecessarily inflicting a large amount of force upon a non-threatening arrestee has been clearly established." *Id.* at 5. The Fifth Circuit has made it clear that "general contentions" such as "a constitutional right to be free from excessive force" do not satisfy the second prong of the qualified immunity analysis. *Shumpert*, 905 F.3d at 321. Thus, the cases cited do not satisfy the second prong of the qualified immunity analysis.

However, the qualified immunity analysis "does not require a case directly on point." *Kisela*, 138 S. Ct. at 1152. A police officer "who commits a patently obvious violation of the Constitution is not entitled to qualified immunity." *Villarreal*, 17 F.4th at 540. In this instance, the force Officer Serrano allegedly applied occurred after Howard had previously attempted to flee. Dkt. 28 ¶ 13. The court cannot conclude that forcing Howard to the ground to prevent a similar attempt is a patently obvious violation of the Constitution. Therefore, Officer Serrano is entitled to qualified immunity for the § 1983 claim for excessive force.

### ii. Unreasonable Strip Search

The court has already addressed the extraordinary nature of the alleged public strip search. *Supra*, III(B)(1)(ii). Upon being slammed against the squad car, Officer Serrano and other HPD officers allegedly removed Howard's pants and left him on the pavement with buttocks, genitals, and feces exposed to public view. Dkt. 28 ¶¶ 27–28. After Officer Serrano invoked qualified immunity, Howard cited no case in which an officer acting under similar circumstances was held to have violated the Constitution. *See* Dkt. 44. However, a police officer "who commits a patently obvious violation of the Constitution is not entitled to qualified immunity" even if the plaintiff does not "cite binding case law involving identical facts." *Villarreal*, 17 F.4th at 540.

As previously noted, "[c]ourts across the country are uniform in their condemnation of intrusive searches performed in public." *Campbell*, 499 F.3d at 719.  The Fifth Circuit has made clear that potential threats to officer safety do not justify a strip search in public when the suspect has already been handcuffed and patted down.  *Williams*, 352 F.3d at 1004.  The court concludes that the uniform condemnation of public strip searches coupled with the unnecessary nature of the alleged search renders the constitutional violation so patently obvious that every reasonable officer in that situation would know such a search was unlawful.  Therefore, Officer Serrano is not entitled to qualified immunity for the alleged public strip search.

### iii. Bystander Liability

"[A]n officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983."  *Hale*, 45 F.3d at 919.  Officer Serrano was allegedly present, observed, and failed to intervene when Officer Vieira allegedly beat Howard with handcuffs.  Dkt. 28 ¶¶ 8, 15.

Fifth Circuit case law requires a plaintiff pursuing a § 1983 claim based on a theory of bystander liability to show that the bystander officer had a clearly established constitutional duty to intervene, in addition to showing the acting officer was violating a clearly established constitutional right.  *Joseph on behalf of Estate of Joseph v. Bartlett*, 981 F.3d 319, 345 (5th Cir. 2020) (nine officers who observed two other officers tase and beat an unresisting arrestee were entitled to qualified immunity because the plaintiffs were unable to carry their "burden to demonstrate that the law was "clearly established"—that . . . any reasonable officer would have known that the Constitution required them to intervene").  Not all circuits impose this additional burden on plaintiffs and conclude the duty to intervene is clearly established from the

constitutional violation of the acting officer.  *See, e.g.*, *Helm v. Rainbow City, Ala.*, 989 F.3d 1265, 1278 (11th Cir. 2021) ("in cases where the use of force is declared clearly unconstitutional, the officers that failed to intervene are 'no more entitled to qualified immunity than [the officer using force].'") (quoting *Edwards v. Shanley*, 666 F.3d 1289, 1298 (11th Cir. 2012)).

Considering the rule set forth in *Joseph*, the court cannot say it was patently obvious that Officer Serrano violated a constitutional duty to intervene.  Further, the only cases Howard cites to satisfy his burden are from other circuits that do not follow the approach in *Joseph*.  *See* Dkt. 28 ¶ 67.  "Where no controlling authority specifically prohibits a defendant's conduct, and when the federal circuit courts are split on the issue, the law cannot be said to be clearly established." *Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011).  Therefore, the court concludes Officer Serrano is entitled to qualified immunity for bystander liability.

### 2.  Statutory Immunity for State-Law Claims

Under Texas law, tort claims based on a police officer's conduct within the general scope of his employment are considered to be against the officer in his official capacity only, requiring the suit against the office to be dismissed unless amended to be against the governmental unit only. Tex. Civ. Prac. & Rem. Code § 101.106(f); *see also Garza v. Harrison*, 574 S.W.3d 389, 400 (Tex. 2019) ("section 101.106(f) essentially prevents an employee from being sued at all for work-related torts and instead provides for a suit against the governmental employer.").  Officer Serrano argues that all the alleged actions relating to a claim of assault and battery would have been conducted within the general scope of his employment, and the state-law tort claims are thus subject to section 101.106(f). Dkt. 42 ¶¶ 32–37.  Howard appears to concede this point by failing to address the argument in his response to the motion.  *See* Dkt. 44.  The court concludes that

Officer Serrano's alleged actions were within the general scope of his employment. Thus, Texas law requires Howard's state-law claims for assault and battery to be dismissed. *See* Tex. Civ. Prac. & Rem. Code § 101.106(f).

Therefore, Officer Serrano's motion to dismiss (Dkt. 42) is GRANTED IN PART AND DENIED IN PART. It is GRANTED regarding the § 1983 claims for excessive force and bystander liability and the state-law assault and battery claim. The motion is DENIED regarding the § 1983 claim for an unreasonable strip search.

### E. Officer Aslam and Sgt. Attebury's Rule 12(b)(6) Motions to Dismiss

Howard's first amended complaint brings § 1983 claims and a state-law assault and battery claims against Officer Aslam and Sgt. Attebury. Dkt. 28 ¶¶ 60–67. Howard's § 1983 claims against Officer Aslam and Sgt. Attebury are based on bystander liability for the actions of other HPD officers—including Officers Vieira and Serrano. Dkt. 28 ¶¶ 62, 67. Officer Aslam and Sgt. Attebury move to dismiss all claims arguing they were not alleged to be present during any use of excessive force and are entitled to qualified immunity. Dkts. 31, 32. The court agrees.

#### 1. Bystander Liability for Excessive Force

"[Bystander] liability will not attach where an officer is not present at the scene of the constitutional violation." *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013). Officer Aslam and Sgt. Attebury are not alleged to have been present during any of the alleged uses of excessive force and allegedly arrived after Howard was on the ground. Dkt. 28 ¶¶ 21, 23. Thus, Howard's first amended complaint does not allege bystander liability for the excessive force claims.

### 2. Bystander Liability for an Unreasonable Strip Search

Bystander liability was initially limited to § 1983 claims involving excessive force. *See Hale*, 45 F.3d at 919.  The Fifth Circuit has since clarified that "other constitutional violations also may support a theory of bystander liability." *Whitley*, 726 F.3d at 646 n.11.  Officer Aslam and Sgt. Attebury are potentially subject to bystander liability for the unconstitutional strip search because Howard's first amended complaint alleges that they were present while Howard was lying naked on the ground, with his buttocks, genitals, and feces exposed to public view, and did not intervene. Dkt. 28 ¶¶ 21, 23.  Both officers raise the defense of qualified immunity.  Dkts. 31 ¶¶ 8–10, 32 ¶¶ 8–10.  The court will address the second prong of the qualified immunity analysis first. *See Pearson*, 555 U.S. at 236.

To defeat qualified immunity, Howard must show that they had a clearly established constitutional duty to intervene in the strip search. *See Joseph*, 981 F.3d at 345.  Considering the rule set forth in *Joseph*, the court cannot conclude that it was patently obvious that Officer Aslam and Sgt. Attebury violated a constitutional duty to intervene.  Without a patently obvious violation, Howard must cite controlling authority to clearly establish the duty. *See Villarreal*, 17 F.4th at 540.  Howard points to no such controlling authority. *See* Dkts. 28, 44.  The only cases Howard cites to satisfy his burden are from other circuits that do not follow the approach in *Joseph*. *See* Dkt. 28 ¶ 67.  Therefore, the court concludes that Officer Aslam and Sgt. Attebury are entitled to qualified immunity for the § 1983 claim based on bystander liability.

### 3. State-Law Assault and Battery

Howard's first amended complaint alleges in a conclusory fashion that "the individually named defendants committed assault." Dkt. 28 ¶¶ 65.  Howard does not allege facts to support a

claim that either Officer Aslam or Sgt. Attebury assaulted the plaintiff.  *See* Dkt. 28. In fact, Howard's first amended complaint alleges they arrived after any assault had already occurred. Dkt. 28 ¶¶ 21, 23.  Thus, these claims must be dismissed.  Therefore, Officer Aslam and Sgt. Attebury's motions to dismiss (Dkts. 31, 32) are GRANTED.

## IV. CONCLUSION

For the reasons provided above, it is ORDERED that:

- The City's motion to strike (Dkt. 35) is DENIED;

- The City's motion to dismiss (Dkt. 34) is GRANTED IN PART AND DENIED IN PART:

  o The City's motion is GRANTED for the *Monell* claims of excessive force for the restraint while walking Howard back to the squad car, excessive force applied during the search, and an unreasonable strip search and these claims are DISMISSED WITH PREJUDICE;

  o The City's motion is DENIED regarding the *Monell* claims of excessive force in the alleged beating of Howard with handcuffs and the alleged post-search force to the pavement;

- Chief Acevedo's motion to dismiss (Dkt. 33) is GRANTED IN PART AND DENIED IN PART:

  o Chief Acevedo's motion is GRANTED regarding the § 1983 claim for the strip search under a theory of supervisor liability, the § 1983 claim for excessive force under a theory of bystander liability, and the state-law

assault and battery claim and these claims are DISMISSED WITH
PREJUDICE;

- o  Chief Acevedo's motion is DENIED regarding the § 1983 claim for
  excessive force under a theory of supervisor liability.

- Officer Serrano's motion to dismiss (Dkt. 42) is GRANTED IN PART AND
  DENIED IN PART:

  - o  Officer Serrano's motion is GRANTED regarding the § 1983 claims for
    excessive force and bystander liability as well as the state-law assault and
    battery claim and these claims are DISMISSED WITH PREJUDICE;

  - o  Officer Serrano's motion is DENIED regarding the § 1983 claim for an
    unreasonable strip search;

- Officer Aslam's motion to dismiss (Dkt. 31) is GRANTED and all claims against
  Officer Aslam are DISMISSED WITH PREJUDICE; and

- Sgt. Attebury's motion to dismiss (Dkt. 32) is GRANTED and all claims against
  Sgt. Attebury are DISMISSED WITH PREJUDICE.

Signed at Houston, Texas on February 16, 2022.

Gray H. Miller
Senior United States District Judge